**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Richard E. HAWK, Defendant-Appellant.**

**No. 73-2800.**

United States Court of Appeals, Ninth Circuit.

May 15, 1974.

Certiorari Denied Oct. 15, 1974.
See 95 S.Ct. 67.

---

Jerrold M. Ladar (argued), San Francisco, Cal., for defendant-appellant.

John M. Youngquist, Asst. U.S. Atty. (argued), James L. Browning, Jr., U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before MOORE,* BROWNING and CHOY, Circuit Judges.

## OPINION

CHOY, Circuit Judge:

Hawk was charged with willfully failing to file federal income tax returns for the years 1966, 1967, 1968, and 1969 in violation of 26 U.S.C. § 7203.[1]

Hawk, an experienced attorney, admitted knowledge of his obligation to file returns and failure to do so. His excuse was that in the first years he was confronted with serious personal problems which left his affairs in disarray; thereafter, he said he "had a mental block about it" and that "he just sort of stuck his head in the sand." The jury found him guilty on the counts covering 1968 and 1969 and acquitted him as to the two previous years. We affirm.

### Instructions on Willfulness

The trial judge instructed the jury that the defendant's failure to file would be willful if the "failure to act was voluntary and purposeful and with the specific intent to fail to do what he knew the law requires (sic) to be done; that is to say, with the bad purpose to disobey or disregard the law . . . ."[2] This followed word for

---

* The Honorable Leonard P. Moore, United States Senior Circuit Judge for the Second Circuit, sitting by designation.

1. That section provides in pertinent part:
    Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return . . ., keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor. . . .

2. The charge as relevant to willfulness was:
    Now, we come to specific intent and willfulness. The specific intent of willfulness is an essential element of the crime of failing to make an income tax return. The term "willfully" used in the statute . . . means voluntary, purposeful, deliberate, and intentional as distinguished

word an instruction requested by Hawk except for one omission: in the last clause, Hawk's requested instruction read, "that is to say, with the bad purpose *and/or evil motive* either to disobey or disregard the law." (Emphasis added.) Hawk argues that United States v. Bishop, 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973), required the trial court to include this "evil motive" language. We do not agree.

In reversing a decision of this court, 455 F.2d 612 (1972), the *Bishop* Court overturned a line of decisions of this circuit [3] which had established two levels of willfulness applicable separately to felony and misdemeanor offenses under 26 U.S.C. §§ 7201–7207 of the criminal tax statutes. Where the crime charged was a felony, as is, for example, a willful evasion of tax under § 7201, we had required that there be a specific intent to commit the illegal act knowing of the legal obligation. On the other hand, where the crime charged was a misdemeanor, as is, for example, a failure to file under § 7203, a looser instruction was required in which willful was defined as, among other things, "capri-

ciously or with a careless disregard whether one has the right to act." *E. g.*, Abdul v. United States, 9 Cir., 254 F.2d at 294. Though confining itself to this issue, the Court, in a concluding statement, gave rise to Hawk's argument here. Justice Blackmun, writing for the Court, stated that "Until Congress speaks otherwise, we . . . shall continue to require, in both tax felonies and tax misdemeanors that must be done 'willfully,' the bad purpose *or evil motive* described" in Murdock v. United States, 290 U.S. 389, 78 L.Ed. 381 (1933). United States v. Bishop, 412 U.S. at 361 (emphasis added).

The Government contends that *Bishop* does not compel an instruction using the "evil motive" language on the narrow ground that the Court's decision was limited to the two criminal tax statutes before it—§ 7206(1), the felony of willfully subscribing to a false return, and § 7207, the misdemeanor of willfully "delivering" a false statement. But as the quoted statement above indicates, and as the remainder of the opinion makes crystal clear,[4] the Court's opinion ex-

from accidental, inadvertent, or negligent. Mere negligence, even gross negligence, is not sufficient to constitute willfulness under this criminal law.

. . . The failure to make a timely return is willful if the defendant's failure to act was voluntary and purposeful and with the specific intent to fail to do what the law requires (sic) to be done; that is to say, with the bad purpose to disobey or disregard the law that requires him to disclose to the Government facts and (sic) material to the determination of his income tax liability. . . .

There is no necessity that the Government prove that the defendant had the intention to defraud it or to evade the payment of any taxes for the defendant's failure to file to be willful under this provision of law. That is, the intention to avoid the law or to pay the taxes constitutes the crime charged by each of these counts as long as it is willful and knowing as I have defined the term for you. On the other hand, the defendant's conduct is not willful if you find that he failed to file a return because of negligence, inadvertence, accident, or due to his good faith misunder-

standing of the requirements of the law, if there was such misunderstanding.

3. United States v. Haseltine, 419 F.2d 579, 581 (9th Cir. 1969) (§§ 7201 and 7203); Martin v. United States, 317 F.2d 753 (9th Cir. 1963) (§ 7203); Abdul v. United States, 254 F.2d 292 (9th Cir. 1958), cert. denied, 364 U.S. 832, 81 S.Ct. 44, 5 L.Ed.2d 58 (1960) (§§ 7202 and 7203); *cf.* United States v. Fahey, 411 F.2d 1213 (9th Cir.), cert. denied, 396 U.S. 957, 90 S.Ct. 430, 24 L.Ed.2d 422 (1969) (§ 7203); Edwards v. United States, 375 F.2d 862 (9th Cir. 1967) (§§ 7201, 7203, and 7206(2)).

4. The opinion broadly disapproves of our decisions applying the two-level definition of willfulness, *see* 412 U.S. at 347, 348 n. 2, 351 & n. 3, and those decisions, as the opinion noted, have concerned criminal tax provisions other than those before the *Bishop* Court. *See* note 3 *supra.* Indeed, the Court's discussion centers on a rejection of the reasoning of Abdul v. United States, *supra,* which concerns §§ 7202 and 7203. *See* 412 U.S. at 351–356. Moreover, the Court read its earlier decision in Sansone v. United States, 380 U.S. 343, 85 S.Ct. 1004, 13 L.

tends to the definition of willfulness in the other criminal tax statutes in which it is an element, §§ 7201–7207, including, of course, the provision under which Hawk stands accused, § 7203. The reason *Bishop* does not compel inclusion of the term "evil motive" is much simpler: an issue concerning the necessity of employing that language was not presented in *Bishop*. The Court was confronted only with the permissibility of the two-level definition of willfulness, and beyond that nothing in the case related to the precise form of words necessary to convey the meaning of willfulness.

Still, a nagging question remains as to Justice Blackmun's reference to "evil motive"; was it the unstated intent of the opinion to require inclusion of those exact words? We think not. The statement in the opinion is that willfulness is to be uniformly defined to require the bad purpose or evil motive *described* in Murdock v. United States, 290 U.S. 389, 78 L.Ed. 381 (1933). In *Murdock* the defendant had declined to answer certain questions relating to his tax liability on Fifth Amendment grounds. He was prosecuted for "willfully" failing to supply information to revenue officials. During the course of the prosecution it was determined that he had not been justified in asserting his Fifth Amendment privilege. Murdock defended arguing that his refusal was not willful. The Supreme Court held he was entitled to an instruction that if his refusal was in good faith— that is, with an honest belief in the protection of the Fifth Amendment—it could not be willful. The thrust of the opinion is that willfulness requires proof that the act was done with knowledge it was wrongful. The Court discussed a number of ways of expressing this type

of specific intent, and among the terms mentioned were "bad purpose" and "evil motive." *Id.* at 394. *See also* Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943).

However, neither bad purpose nor evil motive is an independent element of a willful failure to file under § 7203. The term "evil motive" is merely a "convenient shorthand expression to distinguish liability based on conscious wrongdoing from liability based on mere carelessness or mistake." Boardman v. United States, 419 F.2d 110, 114 (1st Cir. 1969), cert. denied, 397 U.S. 991, 90 S.Ct. 1124, 25 L.Ed.2d 398 (1970). Thus the term expresses, in a brief way, the more cumbersomely stated concept of specific intent in *Murdock*, a concept the instructions must ultimately convey. *See* United States v. Platt, 435 F.2d 789, 793–795 (2d Cir. 1970); United States v. Matosky, 421 F.2d 410, 412 (7th Cir.), cert. denied, 398 U.S. 904, 90 S.Ct. 1691, 26 L.Ed.2d 62 (1970) ("the only bad purpose or bad motive necessary for the government to prove is a deliberate intention not to file returns which the defendant knew ought to be filed."); Hayes v. United States, 407 F.2d 189, 195 (5th Cir.), petition for cert. dismissed, 395 U.S. 972, 89 S.Ct. 2133, 23 L.Ed.2d 777 (1969); *cf.* United States v. Smith, 487 F.2d 329 (9th Cir. 1973); Haskell v. United States, 241 F.2d 790, 794 (10th Cir.), cert. denied, 354 U.S. 921, 77 S.Ct. 1379, 1 L.Ed.2d 1436 (1957). This, we think, was all that *Murdock*—and *Bishop*—meant by the use of that term.

A number of cases, in accord with this reasoning, have rejected claims that willfulness instructions must include the terms bad purpose or evil motive.[5]   In

---

Ed.2d 882 (1965), as "clearly implying" that "the word 'willfully' possesses the same meaning in §§ 7201, 7203, and 7207" thereby "foreclosing" the argument that " 'willfully' was to be given one meaning in the tax felony statutes and another meaning in the tax misdemeanor statutes." 412 U.S. at 356. As the Court stated, "Congress used the

word 'willfully' to describe a constant rather than a variable in the *tax penalty formula*." *Id.* at 359–360 (emphasis added).

5. A few cases, it is true, have quoted lower court instructions using, or have themselves employed, both the "bad purpose" and "evil motive" language. *See e. g.*, United States v. Klee, 494 F.2d 394 (9th Cir., 1974);

United States v. DiVarco, 484 F.2d 670 (7th Cir. 1973), cert. denied, 415 U.S. 916 (94 S.Ct. 1412, 39 L.Ed.2d 470, 1974), for example, the jury instructions, in a prosecution for willfully subscribing to a false return under § 7206(1), omitted reference to either bad purpose or evil motive. The instructions were upheld because they adequately conveyed the notion of *mens rea* without the need of the shorthand terms. *Id.* at 673–674. Similarly, in United States v. Malinowski, 472 F.2d 850 (3d Cir.), cert. denied, 411 U.S. 970, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973), the defendant, who deliberately overstated the number of his dependents on his withholding form as a protest against the Viet Nam war, was prosecuted for a § 7205 willful misstatement of information. He requested a bad purpose instruction so as to provide the jury with an opportunity to acquit based on his anti-war beliefs. A panel of the Third Circuit affirmed the trial court's rejection of the proffered instruction, reasoning that what was central to willfulness was that the act be done with "the specific intent to do something [the defendant] knew the law forbade." *Id.* at 855. " '[B]ad purpose' and 'evil purpose' are not 'magic words' which must be included in a jury charge on willfulness." *Id. See* United States v. Douglass, 476 F.2d 260, 263–264 (5th Cir. 1973); *cf.* United States v. Simpson, 460 F.2d 515, 518 (9th Cir. 1972); Boardman v. United States, 419 F.2d at 114; United States v. Moylan, 417 F.2d 1002, 1004 (4th Cir. 1969), cert. denied, 397 U.S. 910, 90 S.Ct. 910, 25 L.Ed.2d 91 (1970); United States v. Clearfield, 358 F.Supp. 564, 574–575 (E.D.Pa.1973).

Here too, the inclusion of the two words "evil motive" in the instructions was unnecessary. While the use of such terms is often helpful, all that is required are instructions which communicate the proper notion of specific intent in understandable terms. The instructions here were adequate to that purpose.

### Evidence of Reporting Discrepancies

After being informed that he was under investigation, Hawk had returns prepared and filed by an accountant for the years in which he was delinquent. The accountant was given most, but not all, of Hawk's records and computed Hawk's gross income[6] on the basis of deposit slips for Hawk's commercial checking account plus an additional amount that Hawk estimated he received in cash and did not deposit. Subsequent investigation revealed his gross income to be substantially greater than had been reported, largely for two reasons: (1) because Hawk's estimate of cash received but not deposited was less than his books showed; and (2) because certain of his income was withdrawn from a different account, a trustee account, and was not reported—probably because the accountant was never given the records for this account. Evidence of these discrepancies was introduced at trial over the objection of Hawk's attorney. Hawk complains that since he was accused of a failure to file, not tax evasion, the evidence was irrelevant.

The evidence, though not very relevant, was material nonetheless on the issue of willfulness. *See* United States v. MacLeod, 436 F.2d 947, 950 (8th Cir.), cert. denied, 402 U.S. 907, 91 S.Ct. 1378, 28 L.Ed.2d 647 (1971). First, it showed a pattern of increasing gross income not so clearly reflected in his initially-filed returns. That bore on his motive for

---

United States v. Palermo, 259 F.2d 872, 881 (3d Cir. 1958); Abdul v. United States, 254 F.2d at 293–294. But none of these cases raised the question of whether the term "evil motive" must be used in the instruction. That "evil motive" is a shorthand expression in these cases is illustrated by the many other cases in which the language does not appear. *See, e. g.,* United States v. Gurt-

ner, 474 F.2d 297, 299 (9th Cir. 1973); United States v. Lachmann, 469 F.2d 1043, 1044–1045 (1st Cir. 1972), cert. denied, 411 U.S. 931, 93 S.Ct. 1897, 36 L.Ed.2d 390 (1973); Martin v. United States, 317 F.2d at 754.

6. Gross income is the only figure relevant since it is the measure of who must file. *See* 26 U.S.C. § 6012.

failing to file. Second, his continued failure to *fully* disclose his income was relevant to show that the original failures to file may have been prompted by a desire to escape taxation. This, too, bore on willfulness. *Cf.* United States v. Magnus, 365 F.2d 1007, 1011 (2d Cir. 1966), cert. denied, 386 U.S. 909, 87 S. Ct. 856, 17 L.Ed.2d 783 (1967); Lumetta v. United States, 362 F.2d 644, 645–646 (8th Cir. 1966). Moreover, cautionary instructions emphasizing the limited relevance of this evidence were repeatedly given by the trial judge, thereby minimizing any prejudicial effect the evidence might have had.[7]

Hawk's argument that he merely gave the records to an accountant and thus could have had no knowledge of the understatements is unpersuasive. He failed to adequately inform the accountant of or supply the necessary records relating to the understatements, and the jury could have inferred that this was intentional. We conclude the evidence was properly admitted.

### Prosecutor's Comment

■ At one point during the trial, the prosecutor, in discussing an evidentiary point with the judge, asked the court to reserve its ruling "and strike it if it is not tied up, if the defendant goes on the stand." The comment was obviously inadvertent, and the judge immediately instructed the jury to disregard it. Even assuming it was a *prejudicial* comment on the accused's right to remain silent—which we doubt, *see* United States v. Altavilla, 419 F.2d 815, 817 (9th Cir. 1969)—the judge's instruction fully cured it. *See, e.g.,* United States v. Dana, 457 F.2d 205, 209–210 (7th Cir. 1972); United States v. Haili, 443 F.2d 1295, 1300 (9th Cir. 1971); Hayes v. United States, 407 F.2d at 195.

Appellant's other contentions are without merit.

Affirmed.

---

7. We add a note of caution. Evidence of such limited relevance must be admitted with care. In some instances, the potential for

---

prejudice as well as the dangers of consuming undue time and confusing the jury may be so great as to warrant its exclusion.